JOHN GARWOOD, Respondent, v. THE N. Y. CENTRAL & HUDSON
R. R. R. Co., Appellant.

Plaintiff was the owner of a mill operated by water power furnished by a
creek. Defendant, who was a riparian owner above, under a claim of
right, diverted the waters of the creek, conveying them by pipes to
reservoirs whence its locomotives were supplied with water. The jury
found, on sufficient evidence, that the water so diverted from the creek
was sufficient " to perceptibly reduce the volume of water therein," and
to " materially reduce or diminish the grinding power of plaintiff's mill,"
and that in consequence he has sustained damage to a substantial
amount. *Held*, that plaintiff was entitled to maintain an action to re-
cover the damages sustained, and restrain such diversion.
*Elliott* v. *F. R. R. Co.* (10 Cush. 191), and *Earl of S.* v. *G. N. R. R. Co.* (10
L. R. 10 ; Ch. Div. 707), distinguished.

(Argued December 10, 1880 ; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Su-
preme Court, in the fourth judicial department, entered upon
an order made May 26, 1879, reversing an order of Special Term,
which denied plaintiff's demand for equitable relief, and for a
judgment for damages, and ordered that the action be retained
as an action at law for trial by a jury upon a single question speci-
fied in the order. (Reported below, 17 Hun, 356.)

This action was brought by the plaintiff, who is the owner
of a grist-mill, which is operated by the waters of Tonawanda
creek, in the town of Batavia, Genesee county, to restrain the
defendant from diverting the water of said stream, above the
plaintiff's mill, to certain tanks and reservoirs constructed by
the defendant for the purpose of supplying its locomotive
engines with water, and also to recover damage for such
diversion.

The cause being at issue, the court, at Special Term, ordered
certain issues framed, to be tried by a jury, and they were
afterward tried and a verdict rendered therein. The issues
and the verdict were as follows :

First. Has the diversion of the water of the Tonawanda
creek, in the village of Batavia, above the plaintiff's mill, by

Statement of case.

the New York Central Railroad Company, and by the defendant, been of sufficient amount to perceptibly reduce the volume of water flowing in said creek, and so much as to materially reduce or diminish the grinding power of the plaintiff's mill? If yes, for what length of time was such reduction or diminution continued.

The jury answered yes to that question, and fixed the length of time at four hundred and seventy-four days.

The second question was answered in the negative, and is now unimportant.

Third. What damage has the plaintiff sustained by the diversion of the water of said creek from said mill by the New York Central railroad and the defendant? In answer to that question the jury fixed the damages at $500.

The plaintiff moved the cause for a final hearing at Special Term on the verdict, and the proof taken on the trial of the issues which the parties stipulated might be used for that purpose. Certain undisputed questions of fact of a formal character were admitted. It appeared in evidence that the water was carried from the stream to tanks or reservoirs by means of iron pipes which the railroad company had laid in the ground for that purpose, and that it was used to supply defendant's locomotives.

The cause having been heard, the court made an order directing that the demand of the plaintiff for equitable relief by way of granting a perpetual injunction, and compelling the defendant to take up its pipes, and cease to use any of the water of the stream for supplying its engines and operating its road, be denied, and adjudging that as the plaintiff failed in the chief purpose of the suit he was not entitled to a judgment for the damages assessed by the jury; and further ordering that as the question of reasonable use has not been passed upon, the action be retained as an action at law, and that the plaintiff have the right to bring the action to trial before a jury upon the single issue whether the use of the water by the defendant was reasonable. From that order the plaintiff appealed.

The General Term order directed judgment that an in-

junction issue perpetually restraining defendant from divert-
ing the water of said creek, to the injury of the plaintiff, and
that he recover the damages found by the jury. Judgment
was entered accordingly.

*Samuel Hand* for appellant. By the common law of nature
the use of water flowing in its natural channel, like the use of
heat and light, is common to all, and is not the subject of ex-
clusive property in any. (Justin., B. 2, tit. 1, § 1; Grot. B. C.
2, § 12; Puff., B. 4, C, § 52; Vattel, B. 1, C. 20, pp. 101–110;
Vinius, 140, 141, 142; Brown's Civil Law, B. 2, C. 1, p. 170;
Angell on Water-courses, §§ 121, 122.) In the enjoyment of
this natural right the owner of the land over or through
which a natural stream flows may abstract from the volume
thereof for all reasonable purposes, in the manner in which
such streams are usually enjoyed. (*Weston* v. *Alden*, 8 Mass.
136; *Anthony* v. *Lapham*, 5 Pick. 175; *Newhall* v. *Iveson*,
8 Cush. 595–599; *Blanchard* v. *Baker*, 8 Greenl. 253; *Ar-
nold* v. *Foot*, 12 Wend. 331; *Embrey* v. *Owen*, 6 Exch. 368;
*Wadsworth* v. *Tillotson*, 15 Conn. 366; *Mayor* v. *Com'rs,
etc.*, 7 Barr. [Pa.] 348; *Pitts* v. *Lancaster Mills*, 13 Metc. 156.)
It is only for an unreasonable use that an action is maintain-
able. (*Weston* v. *Alden*, 8 Mass. 136; *Colburn* v. *Richards*,
13 id. 420; *Cook* v. *Hull*, 3 Pick. 269; *Anthony* v. *Lap-
ham*, 5 id. 175; *Evans* v. *Merriweather*, 3 Scam. 492, 496;
*Union Mills & Milling Co.* v. *Ferris*, 2 Sawyer [U. S. Cir.
Ct.], 196; *Wheatley* v. *Chrisman*, 24 Penn. St. 302; *Hayes* v.
*Waldron*, 44 N. H. 583; *The Mayor, etc.*, v. *Appold*, 42 Md.
443; *The Mayor, etc.*, v. *Com'rs, etc.*, 7 Barr. 348, 367;
*Carey* v. *Daniels*, 8 Metc. 476; *Embrey* v. *Owen*, 6 Exch.
368; 3 Kent's Com., § 52, pp. 439, 445; *Wood* v. *Wand*, 3
Exch. 748, 780; *Howell* v. *McCoy*, 3 Rawle, 256; *Bullard* v.
*Sar. V. M. Co.*, 77 N. Y. 529; *Prentice* v. *Geiger*, 74 id.
345; Angell on Water-courses [6th ed.], § 121; *Gillett* v.
*Johnson*, 30 Conn. 180; *Wadsworth* v. *Tillotson*, 15 id.
366; *Pitts* v. *Lancaster Mills*, 13 Metc. 156; *Davis* v.
*Getchel*, 50 Me. 602; *Gould* v. *Boston D. Co.*, 13 Gray, 442;

*Merrifield* v. *Worcester*, 110 Mass. 216; *City of Springfield* v. *Harris*, 4 Allen, 494; *Clinton* v. *Myers*, 46 N. Y. 511; Cooley on Torts, 585, note; *Keeney & Wood Mfg. Co.* v. *Un. Mfg. Co.*, 39 Conn. 576; *Snow* v. *Parsons*, 28 Vt. 459; *Platt* v. *Johnson*, 15 Johns. 217; *Palmer* v. *Mulligan*, 3 Caines, 313; *Dickinson* v. *Grand Junc. C. Co.*, 9 Eng. Exch. 521; *Elliott* v. *Fitchburgh R. R. Co.*, 10 Cush. 193.) As between proprietors on the same stream, the right of each qualifies that of the other, and the question always is, whether, under all the circumstances of the case, the use of the water by one is reasonable and consistent with a corresponding enjoyment of right by the other. (*Cary* v. *Daniels*, 8 Metc. 477; *Merritt* v. *Brinkerhoff*, 17 Johns. 321; *Chandler* v. *Howland*, 7 Gray, 350; *Embry* v. *Owen*, 6 Exch. 353; *Hetrick* v. *Deschler*, 6 Penn. St. 32; *Hartzall* v. *Sill*, 12 id. 248; *Pitts* v. *Lancaster Mills*, 13 Metc. 156; *Bliss* v. *Kennedy*, 43 Ill. 68; *Dumont* v. *Kellogg*, 29 Mich. 420; *Atchison* v. *Peterson*, 11 Alb. L. J. 238.)

*Moses Taggart* for respondent. The plaintiff has, by virtue of the conveyance to him, a legal right to the flow of the water in its natural channel or course. His right consists in the current of the stream. (2 Bouvier's Inst. 170, §§ 1610, 1611, 1612, 1613; Gale and Whateley on Easements, chap. 5, § 129; *Story* v. *Piggott*, 3 Bulst. 339; *Merritt* v. *Parker*, 1 Coxe [N. J.], 450; *Twiss* v. *Baldwin*, 9 Con. 291; *Calmont* v. *Whittaker*, 3 Rawle [Penn.], 84, 88; *Pugh* v. *Wheeler*, 2 Dev. & Bat. [N. C.] 50.) The proprietor's natural right is limited to the right to use the water for domestic, agricultural and manufacturing purposes, and he has no right to use it for any other general or useful purpose which may minister to his personal necessities or his business interests, when by such use the quantity is greatly diminished, to the damage or injury of other proprietors. (Arnold on Water-courses, 125; *Colburn* v. *Richards*, 13 Mass. 420; *Arnold* v. *Foot*, 12 Wend. 330; *Ingraham* v. *Hutchinson*, 2 Conn. 584.) The plaintiff has a legal title to the use of the water and current of the stream, and could not be deprived of

such right or title without his consent, or by due course of law, and upon payment to him of a just compensation. (2 R. S., pt. 4, tit. 7, chap. 1, § 34; 2 Bouvier's Law Dict. 646; Code of Procedure, § 642; 1 Bouvier's Law Dict. 636; Const. 1846, art. 1, § 6; *Bloodgood* v. *Mo. & H. R. R. R. Co.*, 18 Wend. 9; *Hudson River R. R. Co.* v. *Outwaters*, 3 Sandf. 689; *Gardner* v. *Trustees of Newburgh*, 2 Johns. Ch. 162; Laws of 1869, chap. 237; *Wynehamer* v. *People*, 13 N. Y. 378; *Morgan* v. *King*, 35 id. 454; *Rochester Water-works* v. *Wood*, 60 Barb. 107; *Clinton* v. *Myers*, 49 N. Y. 511; *Corning* v. *Troy I. and N. Factory*, 40 id. 191; *Olmsted* v. *Loomis*, 9 id. 423, 428; Code of Procedure, § 167; *Webb* v. *Portland Man. Co.*, 3 Sumner, 100; *Tyler* v. *Wilkison*, 4 Mason, 400; *Townsend* v. *McDonald*, 12 N. Y. 381; 2 Story's Eq., §§ 101, 926, 927; Angell on Water-courses, §§ 449, 450; *Cott* v. *Lewiston R. R. Co.*, 36 N. Y. 214; *Penn. Coal Co.* v. *Del. & H. C. Co.*, 31 id. 91; *Brown* v. *Bowen*, 30 id. 519; *Pollet* v. *Long*, 58 Barb. 20; 2 Bouvier's Inst. 174, § 610, note *b*; § 1612, note *b*; § 1613, note *b*.)

DANFORTH, J. The argument in behalf of the appellant raises no doubt as to the correctness of the judgment rendered by the Supreme Court, or its conformity to well-settled rules of law and equity. The diversion of the water is conceded; the jury have found that it was injurious to the plaintiff; he was, therefore, entitled to damages already sustained. It was continuous and under a claim of right; and to prevent further injury preventive relief was proper, for without it there would be vexatious litigation and multiplicity of suits. (Story's Eq. Jur., vol. 2, § 927; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; *Swindon Water-works Co.* v. *W. & B. Canal Co.*, 7 Eng. & Irish Appeal Cas. [L. R.], 697; *Campbell* v. *Seaman*, 63 N. Y. 568.) The plaintiff has obtained nothing more; nor has the court in its decision gone beyond the issues in the action. In measuring the rights and obligations of the defendant, it was treated as a riparian proprietor, for the purpose of enjoying the powers especially granted to it, and such as might be neces-

sary to carry those powers into effect. This was proper in view of the concession by the plaintiff that the defendant was the owner of the land upon which the water was drawn. How it became such owner, whether by purchase or by proceedings under the statute (Laws of 1850, chap. 140, § 14) does not appear. The court, therefore, was not called upon to determine what the defendant's position would have been if the lands had been acquired under the statute, *supra*, and properly regarded the question as one to be determined by the law regulating the rights of upper and lower riparian owners. That law is well settled, and in defining it the authorities cited by the parties to this appeal agree. Each has a right to the ordinary use of water flowing past his land, that is, *ad lavandum et ad potandum*, for domestic purposes and his cattle, although some portion may be thereby exhausted; and this is so, without regard to the effect which such use may have upon the lower owner. The water may also be used for irrigation or for manufacturing purposes. The cases cited by the appellant are abundant to show this, but in every one the irrigation is of the land to which the right to use the water is an incident, or with which the manufacturing purpose is connected, but even this privilege cannot be exercised if thereby the lawful use of the water by a lower proprietor is interfered with to his injury. (*Miner* v. *Gilmour*, 12 Moore's P. C. 156; *Tyler* v. *Wilkinson*, 4 Mason, 397.) Now in the case before us the defendant has done something more; it has not been content with exercising this privilege; it has diverted a considerable portion of the stream not for any use upon the land past which it flows, but for the transaction of its business in other places and for purposes in no respect pertaining to the land itself. The pipes and reservoirs of the defendant are not laid or constructed for the mere purpose of detaining the water a short time, or applying it to machinery or other object upon the land itself, and afterward restoring it, but for facility in filling the defendant's locomotives, in order that they, with power generated from it, may pass as the interest of the defendant may require, to the east or west, returning no portion of it, even in the form of vapor, to the stream

from which it was taken. So far as the plaintiff is concerned, it has carried away from his premises the water, as effectually as if it had been turned into another channel and discharged at Albany or Buffalo; and from this, as the jury has found, he has sustained damage. Not only this, but it has been done under a claim of right by the defendant, which, if acquiesced in by the plaintiff, would in course of time ripen into a realty and destroy the incident of his property — the right of the plaintiff as riparian owner to have the water flow as it had theretofore been accustomed to flow. For in that case, although the defendant could not claim the right as riparian proprietor, it might claim it by prescription; and to prevent this result also, the plaintiff had a clear right to an injunction. The terms of the one granted are sufficiently well guarded. The defendant is "restrained" only "from diverting the water to the injury of the plaintiff." But the learned counsel for the appellant contends that inasmuch as both plaintiff and defendant require the water for artificial as distinguished from natural uses — the one as a power for mill purposes, the other as material or the means of producing power for railroad purposes, it may be abstracted by the defendant, even to the other's injury, although he concedes the rule would be different if the plaintiff required the water for natural purposes. It is difficult to see how such a distinction can be maintained. The plaintiff requires the current because its momentum supplies power. The defendant, as riparian owner, has no right to remove the water and so diminish it. If the defendant's use was for natural purposes, there might be some reason for giving it priority; but this is not pretended. To justify a use beyond that, a grant or license would be necessary. The defendant exhibits neither, but in its answer asserts that its use has been adverse to the plaintiff for more than twenty years. The evidence does not sustain the claim. As to it, therefore, the case presents no exception to the rule, that a riparian proprietor has no right to divert any part of the water of the stream into a course different from that in which it has been accustomed to flow, for any purpose, to the prejudice of any other riparian owner. This is the doctrine

both of the common and civil law (3 Kent's Com. 585), and it stands upon the familiar maxim, *sic utere tuo ut non lædas alieno.* In substance the defendant's claim is, that it has a right to use all the water it pleases; but it does not show the origin or foundation of the right. As the case stands, then, the defendant has diverted the water without right and to the plaintiff's injury; its use, therefore, could not be reasonable, and the inquiry desired by the defendant, as to whether it was or not, would not be applicable. To this effect also are the cases cited in behalf of the appellant. One much insisted upon is *Elliott* v. *Fitchburg R. R. Co.* (10 Cush. 191). There, also, the defendants used the water of the stream " for furnishing their locomotive steam engines with water." The plaintiff sought to recover nominal damage, without proof of actual damage; but the court held against him, and the conclusion was that one riparian proprietor cannot maintain an action against an upper proprietor for a diversion of part of the water of a natural water-course flowing through their lands, *unless* such diversion causes the plaintiff actual perceptible damage. It should be noticed that this was an action at law. *The Earl of Sandwich* v. *The Great Northern R. R. Co.* (L. R., 10 Ch. Div. 707) was a case in equity and upon facts, with one exception hereafter noted, not unlike those now before us. The plaintiff asked both damages and an injunction. It was held that the purpose for which the water was taken was a lawful purpose; that it was a reasonable enjoyment of the property of the defendant; that the quantity taken was not excessive, and when the quantity returned to the stream was taken into consideration, the diversion was very slight. The court says: " Is that a case in which, if there is nothing else in it, the plaintiff could ask in this court for an injunction? What injunction is he entitled to? Is there any damage done to him?" And again says: " Nothing that the defendants have done has exceeded the limits of their lawful right to deal with the water, and there is no particle of evidence to show that the plaintiffs have suffered injury, or that the right which they enjoyed and are entitled to enjoy has been in any degree invaded or interfered with by any

thing that has been done by the defendants;" and the bill was denied. Now the exception which distinguishes the cases cited from the one in hand is this: Here the jury have found, on sufficient evidence, that the defendant has so diverted the water of the creek above the plaintiff as to "perceptibly reduce the volume of water flowing therein," and "materially reduce or diminish the grinding power of the plaintiff's mill," and in consequence thereof, that he has sustained damage to a substantial amount. In the cases cited similar facts are wanting. They lie at the foundation of the one before us and are sufficient to call for the interposition of a court, whether of law or equity.

The effect and proper construction of the act of 1869 (Laws of 1869, chap. 237) or its amendment (Laws of 1877, chap. 224), conferring upon railroad corporations certain powers to take water, are not before us; for the plaintiff is not shown to have acquired any right thereunder. As the case now stands, no reason is shown why the judgment appealed from should not be affirmed, and that, I think, must be the result of this appeal.

All concur.

Judgment appealed from affirmed, with costs.