(April 12, 1920.)

MARY RABIDO and JOSEPH RABIDO, Respondents, v. SHERMAN FUREY, Appellant.

[190 Pac. 73.]

WATERS AND WATERCOURSES—APPLICATION—PERMIT—SOURCE OF SUP-PLY—APPROPRIATION—NATURAL CHANNEL.

    1. Rights acquired under a water license are confined to the water described in the application.

    2. One who diverts water from the ditch of another against the will and without the consent of the latter cannot thereby initiate a water right.

3. Where a water right is dependent upon appropriation rather than application for a permit, priority depends on application of the water to a beneficial use, not on date of commencement of construction of diversion works.

APPEAL from the District Court of the Fourth Judicial District, for Blaine County. Hon. F. J. Cowen, Judge.

Suit to determine priority to the right to use the water of Jagles Springs. Judgment for plaintiffs. *Modified.*

Hawley & Hawley and O. W. Worthwine, for Appellant.

The appellant being the first to appropriate the waters to a beneficial use is entitled to the priority of use of said waters. (*Hillman v. Hardwick,* 3 Ida. 255, 28 Pac. 438; *Geertson v. Burrock,* 3 Ida. 344, 29 Pac. 42; *Dunniway v. Lawson,* 6 Ida. 28, 51 Pac. 1032; *Nielson v. Parker,* 19 Ida. 727, 730, 115 Pac. 488; *Lee v. Hanford,* 21 Ida. 327, 330, 121 Pac. 558; *Bower v. Moorman,* 27 Ida. 162, Ann. Cas. 1917C, 99, 147 Pac. 496; *Kirk v. Bartholomew,* 3 Ida. 367, 29 Pac. 40.)

Clark & Brodhead, for Respondents.

"Where persons have, by their own exertions, developed a supply of water, theretofore not a part of the waters of a creek, and not before available to the users of the stream, they have the first right to take and use such increase." (*Smith v. Duff,* 39 Mont. 382, 133 Am. St. 587, 102 Pac. 984; *Ripley v. Park Center Land & Water Co.,* 40 Colo. 129, 90 Pac. 75; *Churchill v. Rose,* 136 Cal. 576, 69 Pac. 416, 417; *Cardelli v. Comstock Tunnel Co.,* 26 Nev. 284, 66 Pac. 950; *Pomona Land & Water Co. v. San Antonio Water Co.,* 152 Cal. 618, 93 Pac. 881; Farnham on Waters, pp. 2087, 2088; 2 Kinney, 2d ed., p. 1340.)

3. For authorities applicable to appropriation of water for irrigation purposes, see notes in 98 Am. Dec. 542; 60 Am. St. 799.

Authorities discussing the question of correlative rights of upper and lower proprietors as to diversion of water are collated in a note in 41 L. R. A. 744.

McCARTHY, District Judge.—This is an action brought by respondents in the district court in and for Blaine county to determine the relative rights of the parties in and to the waters of Jagles or Goggles Springs, in Blaine county. The district court entered judgment, awarding to respondents the right to the use of .8 second-feet of the waters of the springs for the irrigation of land owned by respondent Mary Rabido, described in the amended complaint, with date of priority of April 1, 1904, and to appellant the right to the use of 1.4 second-feet thereof for the irrigation of land described in his answer and cross-complaint, with date of priority of December 4, 1907. From the judgment and from an order denying a motion for a new trial appellant appeals to this court. The principal point raised by appellant is that the evidence is insufficient to sustain the findings of fact and judgment.

It is admitted that respondent Mary Rabido, and appellant are the owners of the lands described in their pleadings; that they are agricultural in character, and require the artificial application of water in order to raise profitable crops. The springs in question are situate on unoccupied public land of the United States, some distance up a canyon known as Jagles canyon. While there is some conflict in the evidence, the preponderance of the evidence shows that respondents cleaned out the springs, constructed a ditch to conduct the water around a flat situate some distance below them, cleaned out the channel through which the water flowed down the canyon, thus succeeding in bringing the water to the mouth of the canyon, and then conducted it into a ditch which they had constructed.

The evidence is sufficient to sustain the finding of the trial court that prior to the time respondents performed this labor the water from the springs never reached the mouth of the canyon, and that it was entirely the result of their labor that the water became available for irrigation purposes. However, the evidence shows that the work commenced in 1906 instead of 1904 as found by the court. As a result of respondents' labor, in the fall of 1907, the water came down

to the mouth of the canyon and into the ditch which they had built, but they did not apply the water to a beneficial use that fall.

In December, 1907, appellant discovered the water coming out of the canyon and, without making any investigation to determine its source, filed in the office of the state engineer, on December 4th of that year, an application for a permit to appropriate 1 2/5 second-feet of the waters of Goggles Creek, giving the source of supply as Goggles Creek, and the location of the point of diversion as the mouth of Goggles Creek canyon. In May, 1908, he took some water from the ditch which respondents had constructed near the mouth of the canyon, conducted it to his land and applied it to a beneficial use. The finding that about May 1, 1908, appellant applied to a beneficial use 1.4 second-feet of said water is hardly sustained by the evidence. The evidence shows that in the spring of 1908, appellant applied said water on about 3 1/2 acres; in 1909 and 1910 on about the same amount of land, and in 1911 on about eighty acres. There is no definite evidence to show just how much water he applied on his land at those times. It is clear, however, that he did apply some of said water upon his land before the respondents applied any of it on the land described in their complaint, and that he diverted it from the ditch which respondents had built near the mouth of the canyon. Thereafter, he made proof of completion of works, and on March 5, 1913, a water license was issued to him for 1.4 second-feet of the waters of Goggles Creek, the date of priority designated in said license being February 3, 1908.

On June 3, 1908, respondent Joseph Rabido and Ben Burnett filed in the state engineer's office an application for a permit to use 6.2 second-feet of the waters of Jagles Springs, which was approved by the state engineer on June 13, 1908. The application specified that the waters were to be used on a desert claim of Joseph Rabido. Any rights which may have accrued under that permit were subsequently quitclaimed by Rabido and Burnett to respondent Mary Rabido. In 1909, respondent Mary Rabido filed on the desert claim

described in the amended complaint. On September 30, 1911, she applied for and received a permit to use 4/5 second-feet of the waters of Jagles Springs on her desert claim, giving the source of the water supply as Jagles Springs, and the location of the point of diversion as about one mile from the mouth of Jagles Creek. On April 21, 1916, the state engineer certified that the proof of completion of works under that permit had not been made as required by the laws of the state of Idaho, and that the permit was therefore voidable. In June, 1908, respondents continued their ditch to the desert claim of respondent Joseph Rabido, and irrigated seven acres of his land with it, and in 1909 irrigated forty acres of the desert claim of Mary Rabido with it.

C. S., sec. 5556, provides as follows: "Water being essential to the industrial prosperity of the state, and all agricultural development throughout the greater portion of the state depending upon its just apportionment to, and economical use by, those making a beneficial application of the same, its control shall be in the state, which, in providing for its use, shall equally guard all the various interests involved. All waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state are declared to be the property of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the right to the use of the waters of the state for useful or beneficial purposes is recognized and confirmed; . . . . "

C. S., sec. 5558, reads as follows: "The right to the use of the waters of rivers, streams, lakes, springs, and of subterranean waters, may be acquired by appropriation."

C. S., sec. 5561, reads as follows: "As between appropriators, the first in time is first in right."

C. S., sec. 5562, reads as follows: "All ditches now constructed or which may hereafter be constructed for the purpose of utilizing seepage, waste or spring water of the state, shall be governed by the same laws relating to priority of

right as those ditches, canals and conduits constructed for the purpose of utilizing the waters of running streams."

C. S., sec. 5560, provides as follows: "The water appropriated may be turned into the channel of another stream and mingled with its water, and then reclaimed; . . . . "

C. S., sec. 5569, which deals with applications to appropriate water, provides that the application shall give the source of the water supply, and a permit issued upon an application also mentions the source of the water supply as given in the application.

Appellant's application for a permit designates the source of supply as Goggles Creek, and the location of the point of diversion as the mouth of Goggles Creek canyon. In other words, the application is for a permit to appropriate the waters of Goggles Creek. The evidence shows that Goggles Springs are not naturally tributary to or a feeder of Goggles Creek. On the contrary, the waters of the springs spread over and sink into the ground at a place in the canyon known as Rye Grass Flat, a little below the springs. The respondents, after clearing out the springs and increasing the flow, took the water around this flat and diverted it into the creek, cleaned out the creek and thereby conducted the water in question down to the mouth of the canyon and into a ditch which they had dug, utilizing the creek part of the way as their ditch, which they had a right to do under the provisions of C. S., sec. 5560, *supra.*

The water in question was therefore not the water of Goggles Creek, but the water of Goggles Springs. The application to appropriate the water of Goggles Creek covered only water which was naturally flowing therein, not the water of the springs which did not naturally flow in it but were diverted into it by respondent in the manner above indicated. We conclude that the application and permit issued pursuant thereto did not initiate a right to the water in question, namely, the water of Goggles Springs.

Appellant also claims a right to the water by reason of prior actual diversion and application to a beneficial use.

The provision of C. S., sec. 5561, *supra,* has been enforced by a long line of decisions of this court. But in every case the water in question has been properly appropriated under the provisions of our statutes.

Whether or not appellant obtained any right to the water by his attempted appropriation depends upon whether the water was subject to appropriation at the place and in the manner in which he attempted to appropriate it. The language used in C. S., sec. 5556, indicates that water is subject to appropriation only when flowing in its natural channel, and that it must be appropriated therefrom. The principle underlying this statutory provision is recognized by the supreme court of Utah in *Sowards v. Meagher,* 37 Utah, 212, 108 Pac. 1112, and by the supreme court of Wyoming in *McPhail v. Forney,* 4 Wyo. 556, 35 Pac. 773. It is similar to the generally recognized principle that a valid water right cannot be initiated by using another's ditch against his will, or by any other trespass. (Wiel, Water Rights in Western States, 3d ed., vol. 1, secs. 221 and 391; *McRae v. Small,* 48 Or. 139, 85 Pac. 503; *Marshall v. Niagara Springs Orchard Co.,* 22 Ida. 144, 125 Pac. 208.) A general definition of the term "natural channel," applicable to all cases, is a difficult matter. A great deal depends upon the circumstances of each individual case. It may be that water which has once been diverted from its original natural channel, and has, after being used or abandoned, gotten into a channel other than the original one, can be said to be flowing in a natural channel within the meaning of this statute. That question is not before us, and we do not pretend to decide it. It is not necessary in this case to apply the language of that statute to all possible cases which may arise when water has been diverted from its original natural channel and does not return to it. The specific question upon which we pass in this case is whether the water in question, which respondents caused to flow down the canyon and into the ditch which they had constructed, and from which appellant diverted it, was flowing in its natural channel and was diverted therefrom by appellant. In view of

the evidence, as summarized above, we answer this question in the negative. Goggles Creek or canyon was not the natural channel for said water, but was used by respondents as a ditch to carry to their ditch the water which they had diverted from the springs. It is perfectly clear that the ditch out of which appellant diverted the water was not its natural channel. We must not be understood as holding that respondents acquired a completed water right merely by thus diverting it. On the contrary, in the absence of a valid filing by them, or a completed appropriation, appellant or anyone else could have gone to the source of the water, namely, the springs, and made a valid filing or appropriation. But under this statute the water was not subject to appropriation at the place and in the manner attempted by appellant.

We conclude that the evidence supports the finding of the trial court to the effect that respondent Mary Rabido has a prior right to .8 second-feet of the waters of Goggles Springs. However, the date of priority should not be 1904, as found by the trial court, nor even 1907, the year the water was brought down the canyon. Since the state engineer certified that the water permit granted her was voidable because of failure to make proof of completion of works, we must fall back on the date of the actual application of the water for the date of her priority. From the evidence in the record it is not possible to state exactly when the .8 second-feet of water was applied to her entry. The taking of further evidence on this point by the trial court will be necessary.

So far as appellant is concerned, we find that he has acquired no valid right to the waters of Goggles Springs, being the water in question. His permit and license give him a right to the waters of Goggles Creek, and would apply to any water which may run down that creek as distinguished from the waters of Goggles Springs. The only waters in litigation under the issues of this case are the waters of Goggles Springs. Since appellant has no right to them, no relief can be afforded him in this action.

The case is remanded to the trial court with instructions to modify its findings of fact and conclusions of law and decree in accordance with the views herein expressed. In order to fix the exact date of respondents' priority, the trial court is ordered to take further evidence on the question as to the date when the .8 second-feet of the waters of Goggles Springs were applied by respondents to the land belonging to respondent Mary Rabido and described in the amended complaint. No costs are awarded on this appeal.

Rice, J., concurs.

MORGAN, C. J., Dissenting.—The waters of Jagles Springs are property of Idaho and were subject to appropriation wherever found. They were unappropriated, public waters, the right to use which might be acquired until they were used in the irrigation of the lands of these litigants. The parties to this action having failed to conform to the requirements of the law in making their applications to the state engineer, their priorities depend on the dates they placed the waters to a beneficial use.

It must not be understood that C. S., sec. 5560, grants to respondents the right to use the creekbed as a ditch without the consent of the owner of the land on which it is situated. Furthermore, the evidence does not justify the conclusion, which may be drawn from the foregoing opinion, that, in taking the water, appellant committed a trespass.

(June 12, 1920.)

ON PETITION FOR REHEARING.

McCARTHY, District Judge.—The foregoing opinion holds that appellant did not acquire any right to the waters of Goggles Springs. The questions as to whether he acquired a right to the waters flowing in Goggles Creek, and as to whether waters originating in Goggles Springs, but which are permitted to flow in Goggles Creek, are waters of Goggles Creek, are not discussed or decided.

Since the appeal was taken from the judgment, and not from a portion thereof, the entire judgment is before the court and subject to review, even though the respondents took no cross-appeal.

The petition for rehearing is denied.

Morgan, C. J., and Rice, J., concur.